# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

KERRY HOGLAND, et al.                                              PLAINTIFFS

VS.                          3:14CV00273 JTR

TOWN & COUNTRY GROCER
OF FREDERICKTOWN MISSOURI, INC.                        DEFENDANT

## ORDER

Defendant, Town & Country Grocer Of Fredericktown Missouri, Inc. ("Town & Country"), has filed a Motion in Limine and Supporting Brief to Bar Evidence and Testimony Regarding Video of Craniotomy. *Doc. 62*. This video appears on Plaintiff's Exhibit List as Exhibit 16.[1]

Town & Country argues that the video should be excluded from evidence because: (1) it is irrelevant and misleading, given it does not depict Hogland's actual craniotomy; and (2) if it is relevant, its probative value is substantially outweighed by the danger of unfair prejudice, because the video "is likely to evoke a strong emotional response and inflame the passions of the jury." *Doc. 62 at 2-3*.

---

[1] Plaintiff's Exhibit 16 "is an exemplar videotape of a craniotomy surgery," not a video of Hogland's actual craniotomy. *Doc. 87 at 2*.

In Hogland's Response to Town & Country's Motion in Limine to bar the video and testimony regarding the video, she contends that Dr. Robert Abraham, the treating neurosurgeon who performed her craniotomy, will testify "that the video depicts a procedure that is *substantially identical* to the procedure performed on [her]." *Doc. 87 at 3* (emphasis in original). She goes on to argue that her "treating physicians will use the video to explain how and why [her] surgery was performed and how it is that it reduced the potential for a catastrophic brain injury." *Doc. 87 at 4.* While acknowledging that the video is "graphic," Hogland maintains that there is no danger of unfair prejudice because: (1) jurors can be voir dired and warned about whether they will "react emotionally or squeamishly;" (2) the fact it is an exemplar video "allows the jury some distance;" (3) jurors are accustomed to graphic depictions of surgery in popular media; and (4) the graphic nature of the video "demonstrates the significance of the injury" caused by Town & Country's admitted negligence.

Assuming that Hogland's treating neurosurgeon can authenticate the exemplar video and establish that it is substantially identical to the craniotomy he performed on Hogland, it could have some probative value and relevance. *See* Fed. R. Evid. 401. However, *everything* depicted in the video can and presumably will be described by Dr. Abraham in his testimony about the *actual craniotomy* that he performed on Hogland, making the video duplicative and cumulative of his

testimony. Thus, while Dr. Abraham's testimony will lack the "shock and awe" of the proffered "exemplar" video depicting a surgeon removing a portion of a patient's skull and exposing the brain, it will convey and explain *everything* depicted in the video, *i.e.*, "how and why [Hogland's] surgery was performed and how it is that it reduced the potential for a catastrophic brain injury."[2] Thus, contrary to Hogland's suggestion, exclusion of the video in no way "unfairly prevents" her from "proving her case." *Doc. 87 at 5*.

On the other hand, it is hard to envision an exemplar video of any surgery that would cause jurors to react more "emotionally or squeamishly" than a craniotomy. Accordingly, the Court concludes that the limited probative value of the exemplar video is substantially outweighed by the danger of unfair prejudice resulting from its graphic content. *See* Fed. R. Evid 403. The following description of a craniotomy, *which is taken directly from Hogland's own Response*, strongly supports the Court's decision to exclude the video under Fed. R. Evid. 403: (1) a surgeon makes an incision of a large square on the scalp; (2) because of extensive bleeding, many arteries must be "sealed;" (3) the skin flap is folded back, revealing the skull; (4) a high-speed drill is used to make a series of holes in the skull; and

---

[2] A craniotomy is "the surgical removal of part of the bone from the skull to expose the brain." *See* www.hopkinsmedicine.org/.../craniotomy. Unlike other surgeries involving unfamiliar anatomy, jurors can readily understand, from Dr. Abraham's testimony, the two steps involved in performing a craniotomy: (1) making the incisions in the scalp necessary to expose the skull; and (2) using drills and saws to remove a small section of the skull to relieve the pressure from the swelling created by the traumatic brain injury. While a craniotomy is certainly a delicate procedure, it involves only a few surgical steps that a layperson can readily understand.

(5) a saw is then used between the holes to remove a skull flap, exposing the brain. *Doc. 87 at 2. See Rea v. Wisconsin Coach Lines, Inc.*, 2015 WL 1012936 (E.D. La. March 5, 2015) (excluding a video of the plaintiff's cervical fusion surgery — "A lengthy surgical video exposing muscle, skin, and drilling into spinal vertebrae is likely to evoke a strong emotional response or inflame the jury, eclipsing any value or relevance in establishing the fact that the surgery occurred.").

IT IS THEREFORE ORDERED THAT Town & Country's Motion in Limine to Bar Evidence and Testimony Regarding Video of Craniotomy (*doc. 62*) is GRANTED.

Dated this 10th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE